LJW/DEH: USAO#2020R00018

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 MAR 11 PM 3:44

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CRIMINAL NO. DKC-20-098 |
| | * | |
| **IVO LOUVADO,** | * | (False Statement to Federal Law |
| | * | Enforcement, 18 U.S.C. § 1001(a)(2)) |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |

******

## INFORMATION

The United States Attorney for the District of Maryland charges that:

### COUNT ONE
### (False Statement to Federal Law Enforcement)

### Introduction

1. The Baltimore Police Department ("BPD") is an agency of the State of Maryland whose law enforcement jurisdiction includes Maryland's largest city, Baltimore.

2. Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

> As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department … I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service.

3. IVO LOUVADO ("LOUVADO") joined the BPD on November 21, 1999. LOUVADO was promoted to Detective in 2008.

4. In February 2009, LOUVADO was serving on a squad with W.J., C.J., P.G., K.G., and V.R. that was supervised by W.K.

**The Seizure of More Than 41 Kilograms of Cocaine in February 2009**

5. Prior to February 19, 2009, W.J. and C.G. told LOUVADO that they had received information from a confidential informant about a large-scale narcotics trafficker operating out of a residence on the 1400 block of Ellamont Street, in Baltimore, Maryland.

6. On February 19, 2009, LOUVADO, and other members of the squad were conducting surveillance in the 1400 block of Ellamont Street targeting an individual whose initials are T.M. Other officers participating in the law enforcement action followed a car from that residence. Those officers claimed to have recovered trash that contained cocaine residue that had been thrown from the car they had followed. LOUVADO and other officers then responded to the residence that the man was allegedly observed leaving and made entry. LOUVADO and other officers remained in the house until W.J. and C.J. obtained a search warrant from a Baltimore City District Court judge.

7. LOUVADO ultimately participated in the search of the residence and took photographs of items that BPD seized. At some point, LOUVADO was alerted to the presence of a jacket hanging behind a door that contained a large amount of cash in it, which LOUVADO photographed.

8. While in the house, officers found car keys, including a key that had the ability to activate an alarm in a vehicle remotely. A BPD officer activated the alarm and officers heard the alarm sound in a pickup truck that was parked nearby. LOUVADO had never seen the truck before the alarm was activated and had no knowledge of its existence until this time.

9. LOUVADO and other officers went to the pickup. The back of the pickup truck had an opaque cover over it that could be locked. The cover was opened and in the back of the pickup truck, under construction debris, a significant quantity of cocaine was found. LOUVADO and other officers waited with the cocaine until a SWAT team arrived. The SWAT team was called to provide protection during the transportation of the cocaine to BPD headquarters because it was such a large quantity. In order to transport the cocaine from the scene to BPD headquarters, it was loaded into a BPD surveillance van driven by K.G.

10. After the cocaine was loaded into the surveillance van, LOUVADO followed the SWAT team to BPD headquarters to maintain chain-of-custody over the cocaine.

11. Forty-one (41) kilograms of cocaine was turned into the BPD's Evidence Control Unit on February 20, 2009.

12. Later that day, a criminal complaint was filed in the United States District Court for the District of Maryland charging T.M. with possessing with intent to distribute five or more kilograms of cocaine.

### The Sale of Three Kilograms of Cocaine from the February 2009 Seizure

13. Subsequent to the seizure, LOUVADO, K.G. and V.R. discovered 3 additional kilograms of cocaine in the surveillance van that had been used to transport the 41 kilograms that were turned in to BPD. These kilograms of cocaine had come from the seizure from T.M.'s pickup truck on February 19 and 20, 2009, but had not be turned into the BPD on February 20, 2009.

14. Rather than turn this cocaine into BPD, LOUVADO, K.G. and V.R. agreed to sell the cocaine and split the proceeds from its sale.

15. V.R. sold the cocaine to a confidential informant of his, V.R.'s, who trafficked in cocaine. The source proceeded to sell the cocaine in Baltimore City. V.R. received the proceeds of the sale from his source and then shared them with LOUVADO and K.G. Ultimately, LOUVADO received $10,000 in drug proceeds from the sale of the cocaine seized from T.M.'s pickup truck that had not been turned in to BPD.

### The FBI Interviewed the Defendant About the Cocaine Seizure in February 2009

16. In January 2010, LOUVADO became a federal task force officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). As an ATF TFO, LOUVADO knew it was a crime to provide false information, or to conceal or cover up material facts, during voluntary interviews with federal law enforcement.

17. On March 1, 2017, seven members of the BPD's Gun Trace Task Force were arrested on federal racketeering charges, including W.J. Following the filing of charges, the FBI continued to investigate misconduct by members of the BPD.

18. On May 30, 2018, LOUVADO agreed to participate in a voluntary interview with an FBI special agent and an FBI task force officer (collectively, "the FBI agents"). The FBI agents questioned LOUVADO about the seizure of cocaine on February 19 and 20, 2009.

### The Charge

19. On or about May 30, 2018, in the District of Maryland, the defendant,

**IVO LOUVADO,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by concealing and covering up material facts, namely, that he and two other officers had split the proceeds from the sale of three of the kilograms of cocaine that had been seized by BPD on February 19 and 20, 2009. **LOUVADO** knew that the FBI was investigating police corruption and was questioning him about the seizures that day in order to determine if police misconduct had occurred.

18 U.S.C. § 1001.

Date: March 11, 2020

Robert K. Hur
United States Attorney